IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| GWEN BOYKIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:21-cv-507-KPJ |
| | § | |
| KILOLO KIJAKAZI,[1] | § | |
| *Acting Commissioner of Social Security,* | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Plaintiff Gwen Boykin ("Ms. Boykin") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits.[2] Having considered the briefs submitted by the parties and the administrative record, the Court finds the Commissioner's final decision is **AFFIRMED**.

## I.    APPLICABLE LAW

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. *See* FED. R. CIV. P. 25(d).

[2] On March 29, 2022, this case was referred to the undersigned for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and the foregoing consent of the parties. *See* Dkt. 15.

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *See* 20 C.F.R. §404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; or (4) the claimant is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv); *see also Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the claimant cannot show her impairment meets or equals a Listing but proves that she is unable to perform her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *See Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts to the agency at step five; a finding at any step that a claimant is or is not disabled ends the analysis.").

## B.    Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final decision[4] is "'supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence.'" *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam) (quoting *Villa*, 895 F.2d at 1021). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence "must be more than a scintilla, but it need not be a preponderance." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992) (citing *Perales*, 402 U.S. at 401). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (per curiam) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (per curiam) (internal quotation omitted)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475) (internal quotations omitted). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985) (internal quotations omitted).

## II.    BACKGROUND AND PROCEDURAL HISTORY

Ms. Boykin was born in 1966, has at least a high school education, and worked as an office manager until she stopped working in October 2017. *See* Tr. 12, 17, 43, 50, 56.[5] On May 3, 2019, Ms. Boykin filed an application for disability insurance benefits, alleging a disability onset date of January 1, 2017, due to gastroparesis, anxiety, depression, diabetes, trigeminal neuralgia, and hypothyroidism. *See id.* at 57.[6] The Social Security Administration denied Ms. Boykin's claims initially on June 26, 2019, and upon reconsideration on September 24, 2019. *See id.* at 81–84; 87–89. Thereafter, Ms. Boykin filed a written request for a hearing. *See id.* at 90–91. On October 8, 2020, Administrative Law Judge Mark Mendola (the "ALJ") held a hearing. *See id.* at 24–55. The hearing was attended by Ms. Boykin, her attorney, and a vocational expert. *See id.* at 24.

On December 22, 2020, the ALJ issued an unfavorable decision denying Ms. Boykin's claim. *See id.* at 10–18. In his decision, the ALJ found Ms. Boykin met the insured status requirements of the Social Security Act (the "Act") through December 31, 2022. *See id.* at 12. At step one, the ALJ found Ms. Boykin had engaged in substantial gainful activity through October 2017, but there was a continuous 12-month period during which Ms. Boykin did not engage in substantial gainful activity.[7] *See id.* At step two, the ALJ found Ms. Boykin had the following

---

[5] Documents 12-1 through 12-12 comprise the Administrative Record ("Tr."). When citing to the record, the Court cites to the Tr.'s internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

[6] During the Hearing, Ms. Boykin amended her alleged onset date to October 2017. *See id.* at 41.

[7] In a footnote, Ms. Boykin asserts the following:

> [Ms. Boykin's] Amended Onset Date from January 1, 2017 to October 1, 2017 (citing Tr. 41, 228). It appears to be an error that the [ALJ's] decision indicates analysis from January 1, 2017 (citing Tr. 18). The January 1, 2017 date is referenced in the decision without explanation. While [Ms. Boykin] acknowledges that the error may be harmless, the reviewing court cannot know if this was prejudicial where a determination of [substantial gainful employment] level employment past her original alleged onset date may have impacted nay credibility analysis.

severe impairments: diabetes mellitus type 2 with gastroparesis; and obesity. *See id.* The ALJ found Ms. Boykin had the following non-severe impairments: peripheral neuropathy; trigeminal neuralgia/migraine headache disorder; dysthymic disorder; anxiety disorder; GERD; hypothyroidism; hearing loss; lumbar spine disorder status-post surgery; Barrett's esophagus; and grade 2 internal hemorrhoids. *See id.* at 12–13. At step three, the ALJ found that none of Ms. Boykin's impairments, alone or in combination, met or medically equaled a Listing. *See id.* at 14. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Boykin's RFC. *See id.* at 14–16. The ALJ found Ms. Boykin had the RFC to: "perform light work as defined in 20 CFR 404.1567(b) except she can frequently climb ramps and stairs, ladders, ropes, kneel, crouch and crawl." *Id.* at 14. At step four, the ALJ found Ms. Boykin was capable of performing her past relevant work as an office manager. *See id.* at 16. Accordingly, the ALJ concluded Ms. Boykin was not disabled within the meaning of the Act. *See id.* at 18.

Ms. Boykin requested that the Appeals Council review the ALJ's unfavorable decision. *See id*. at 136–43. On April 29, 2021, the Appeals Council denied the request for review. *See* Tr. 1–4. Therefore, the ALJ's decision became the Commissioner's final decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Boykin timely filed her appeal to this Court on July 2, 2021.[8] *See* Dkt. 1.

---

Dkt. 16 at 9 n.1. It is the claimant's burden to show that an error was not harmless. *See Keel v. Saul*, 986 F.3d 551, 557 (5th Cir. 2021) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (noting "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination")). Further, "[p]rocedural perfection in administrative proceedings is not required [and courts] will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). Here, even if the inconsistency Ms. Boykin identifies was error, Ms. Boykin has not shown that absent such error, the ALJ's decision would have been different. Therefore, any error would be harmless and is not grounds for remand. *See Qualls v. Astrue*, 339 F. App'x 461, 465 (5th Cir. 2009) (per curiam) ("Because the ALJ's decision would not have been different without the error . . . and did not affect [the claimant's] substantial rights, the mistake was harmless. Accordingly, [the claimant] is not entitled to reversal or a new disability hearing." (citing *Mays*, 837 F.2d at 1364)).

[8] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 2.

### III.    ANALYSIS

Ms. Boykin argues that as to her diabetes mellitus type 2 with gastroparesis ("diabetes with gastroparesis") and her lumbar impairment, the ALJ's findings are not supported by substantial evidence and the RFC improperly did not include limitations associated with these conditions. *See* Dkt. 16 at 10–16. For the reasons set forth below, the Court finds Ms. Boykin's arguments lack merit and the ALJ's decision should therefore be affirmed.

### A.  Diabetes Mellitus Type 2 with Gastroparesis

First, the Court addresses Ms. Boykin's argument that the ALJ assessed Ms. Boykin's diabetes with gastroparesis as severe at step two and then committed error by not assigning a limitation for this condition in the RFC at step four. *See* Dkt. 16 at 13. The Commissioner responds this was not error, as the consideration at step two of whether a condition is severe is different than the RFC inquiry at step four. *See* Dkt. 17 at 7–8.

On the one hand, courts have found that "the law is clear that a failure of the ALJ to include, in the RFC assessment, any limitation as a result of [an impairment] he found to be a severe impairment may require reversal." *Tyler v. Saul*, No. CV 18-3329, 2020 WL 3549684, at *7 (S.D. Tex. Mar. 2, 2020) (internal quotations omitted); *see also Spears v. Barnhart*, 284 F. Supp. 2d 477, 483 (S.D. Tex. 2002) ("The purpose of assessing the claimant's RFC is to determine the work that can be done despite present limitations. The ALJ, however, did not include any limitations— basically contradicting the fact that he found her impairments to be severe."). On the other hand, "several Texas federal courts have found that an ALJ does not err solely by finding an impairment severe at step two and failing to attribute any limitation to that impairment in his RFC assessment." *Walker v. Colvin*, No. 3:14-CV-1498, 2015 WL 5836263, at *15 (N.D. Tex. Sept. 30, 2015) (collecting cases and discussing the split in authority among Texas federal courts on this issue).

The Fifth Circuit has held "[t]he ALJ's finding that [the claimant] had 'a combination of impairments that is severe' did not foreclose a finding that [the claimant] had a residual functional capacity to perform a range of light work, and is not necessarily inconsistent with that finding." *Boyd*, 239 F.3d at 706 (quoting 20 C.F.R. § 404.1520a(c)(2)); *see also Gutierrez v. Barnhart*, No. 04–11025, 2005 WL 1994289, at *9 (5th Cir. Aug. 19, 2005) (per curiam) ("A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe disability. Rather, the disability must make it so the claimant cannot work to entitle the claimant to disability benefits.").

Courts in this District have adopted the latter approach. *See Bennett v. Kijakazi*, No. 4:21-cv-00702, Dkt. 12, at *7 (E.D. Tex. Mar. 1, 2023), *R. & R. adopted*, Dkt. 13 (E.D. Tex. Mar. 16, 2023) ("[T]he Court finds the ALJ did not err solely by finding [the claimant's] . . . impairment severe at step two and failing to attribute a . . . limitation to that impairment in the RFC assessment."); *Rivera v. Comm'r of Soc. Sec.*, No. 6:20-cv-00614, 2021 WL 7906837, at *1 (E.D. Tex. Nov. 22, 2021) (citing *Walker*, 2015 WL 5836263, at *15) ("[A] court may find that an impairment is severe; however, that does not necessarily mean that the impairment must result in limitations in the RFC.").[9] Given the Fifth Circuit's holding on this issue, the Court likewise finds the ALJ did not err solely by finding Ms. Boykin's diabetes with gastroparesis severe at step two and failing to attribute a limitation to that impairment in the RFC assessment at step four.

Ms. Boykin argues the ALJ's determination that her diabetes with gastroparesis is controlled is not supported by substantial evidence. *See* Dkt. 16 at 12. The Commissioner responds

---

[9] *Spears*, *supra*, found, "The ALJ, however, did not include any limitations—basically contradicting the fact that he found her impairments to be severe." *Spears*, 284 F. Supp. 2d at 483. However, *Spears* does not cite any authority for this proposition. As explained in *Boyd*, the Fifth Circuit explained that a finding of severity at step two does not preclude a finding at step five that a claimant can still work, despite the severe impairment. *See Boyd*, 239 F.3d at 706.

that the ALJ's determination is supported by substantial evidence, and, thus, the ALJ correctly

concluded this condition could not be the basis of a disability finding. *See* Dkt. 17 at 4–5.

"If an impairment reasonably can be remedied or controlled by medication or therapy, it

cannot serve as a basis for a finding of disability." *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir.

1988) (per curiam) (citing 20 C.F.R. §§ 404.1530, 416.930; *Lovelace v. Bowen*, 813 F.2d 55, 59

(5th Cir. 1987)).

As to Ms. Boykin's diabetes with gastroparesis, the ALJ found:

> The frequency and severity of the alleged limitations and symptoms are not fully supported by the relevant medical evidence of record. The claimant has diabetes mellitus with gastroparesis. Treatment records in 2018 show some complaints from the claimant of increasing bloods sugars with no relief from diet and exercise (Exhibit 4F/8). However, treatment records regularly reveal the claimant's diabetes mellitus as well-controlled (e.g., Exhibit 5F/7, 9F/7). An individual with an A1C below 7 percent is considered to have achieved well-controlled diabetes, and in this case, the claimant has routinely had A1Cs no greater than 6 percent (Exhibit 4F/6, 42, 9F/15). Diabetic foot examinations were also routinely normal (Exhibit 4F/43, 51).

> Concurrent with her treatment for diabetes, the claimant was assessed with gastroparesis. In 2017, records from North Texas Gastrointestinal Associates (GI Associates) note complaints of diarrhea and nausea, which started with the use of Metformin (Exhibit 2F/1). It was noted a few months later that diarrhea had resolved after the discontinuation of Metformin (Exhibit 17F/1). Between 2018 and 2019, treatment for stomach-related issues are [sic] intermittent (Exhibit 2F, 4F). In August 2019, it was noted that it  was "unclear" whether the claimant had gastroparesis, and that her sugars  were well-controlled, she did not show other systemic complications from diabetes, and her reflux was also well-controlled (Exhibit 23F/3). Although the claimant has consistently emphasized her GI symptoms, the claimant has only had one ER visit for stomach pain and nausea in September 2019, with a normal CT of the abdomen (Exhibit 10F/9, 11F/1). The ER visits have not been so frequent as to establish absenteeism-related limitations and the claimant has never had an extended hospitalization. An October 2019 treatment record noted that the claimant's diabetes has been stable (Exhibit 27F/144). Thus, the evidence does not support limitations related to the claimant's ability to sustain or maintain employment.

> The claimant testified to extreme symptoms. Specifically, she claimed to feel nauseated about 90% of the day, even with medications, to suffer frequent diarrhea 6-10 times per day; to feel very fatigued; and to have abdominal pain . . . . As explained above in my assessment of the paragraph B criteria, the evidence outside of the claimant's and third-party's subjective allegations simply does not support such debilitating symptoms.

Tr. 15–16. The ALJ cited multiple sources in support of his finding that Ms. Boykin's diabetes with gastroparesis is controlled. Among others, he cited a "Progress Note" from Ms. Boykin's April 30, 2019, appointment with Jack A. Maxwell, D.O. ("Dr. Maxwell"). *See id.* at 15 (citing Ex. 5F at 7). In the "Assessment and Plan" portion of this Progress Note, Dr. Maxwell wrote, "Well controlled type 2 diabetes mellitus with gastroparesis" and listed the medications Ms. Boykin is prescribed for this condition *Id.* at 355. The ALJ also cited a record of Ms. Boykin's August 16, 2019, visit with Kyle Monte Harwood, PA-C ("PA Harwood"). *See id.* at 15 (citing Ex. 9F at 7). In this record, PA Harwood likewise wrote, "Well controlled type 2 diabetes mellitus with gastroparesis" and listed the medications Ms. Boykin is prescribed for this condition. *Id.* at 480.

Ms. Boykin does not dispute the ALJ's interpretation of the evidence the ALJ relied on in his decision. Rather, Ms. Boykin asserts there are "contrary medical findings" in the record that the ALJ was obligated to, but did not, consider. Dkt. 16 at 12. It appears that more specifically, Ms. Boykin is arguing the ALJ was obligated to discuss all of the findings and statements within a given medical opinion. For example, Ms. Boykin notes the ALJ's decision "fails to discuss [Ms. Boykin's] hypoglycemia symptoms of nervousness/anxiousness, sleepiness, tremors, sweats or the progress notes that indicate her 'disease course has been fluctuating.'" *Id.* at 12 (citing Tr. 942; 1083; 1103).

The Court finds Ms. Boykin's argument unpersuasive. In making his determination, "the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that

supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). However, "[t]hat the ALJ [does] not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence." *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curiam) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (rejecting as unnecessary a rule requiring the ALJ to specifically articulate evidence that supported the decision and discuss evidence that was rejected)). Ultimately, the ALJ is not obligated to discuss every statement made within a doctor's opinion. *See Vandestreek v. Colvin*, No. 7:14-CV-00001, 2015 WL 1239739, at *9 & n.4 (N.D. Tex. Mar. 17, 2015) ("[T]he ALJ need not have discussed every finding contained in [the doctor's] opinion, as [the plaintiff] suggests.") (collecting cases); *Penalver v. Barnhart*, No. SA-04-CA-1107, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by [the plaintiff], but the ALJ is only required to make clear the basis of his assessment—he need not discuss all supporting evidence or evidence rejected" (citing *James J. Flanagan Stevedores, Inc. v. Gallagher*, 219 F.3d 426, 430 (5th Cir. 2000))). Moreover, the Progress Note indicating  Ms. Boykin's nervousness/anxiousness, sleepiness, tremors, sweats also contains the assessment, "Well controlled type 2 diabetes mellitus with gastroparesis" and lists the medications Ms. Boykin is prescribed for this condition. Tr. 1087.

Ms. Boykin further argues that her inability to afford an upper endoscopy in July 2017 and a gastric emptying study and esophagogastroduodenoscopy ("EGD") in August 2019 means her condition cannot be considered controlled. *See* Dkt. 16 at 12–13 (citing Tr. 234, 754). The Commissioner responds that Ms. Boykin has failed to meet her burden to show that she could not obtain these diagnostic tests from other sources, such as free or low-cost medical services. *See* Dkt. 17 at 8.

In addition to showing that she cannot afford a certain medical treatment, a claimant must also show she is unable to obtain the treatment from alternative sources such as free or low-cost medical services. *See Lovelace*, 813 F.2d at 59 (explaining that a condition is disabling in law if a "claimant cannot afford prescribed treatment or medicine, *and* can find no way to obtain it") (emphasis added); SSR 82-59, 1982 WL 31384, at *4 (S.S.A. Jan. 1, 1982) (explaining that to show the claimant's failure to follow prescribed treatment was "justifiable" on grounds of inability to afford treatment, "[a]ll possible resources (e.g., clinics, charitable and public assistance agencies, etc.), must be explored," and "[c]ontacts with such resources and the claimant's financial circumstances must be documented"). An ALJ must consider the reasons for a claimant's failure to obtain or comply with medical treatment, including an inability to afford treatment or access free or low-cost medical services. *See* SSR 96–7p, 1996 WL 374186, at *8 (July 2, 1996).

In her brief, Ms. Boykin notes statements in the record that she "was unable to afford the upper endoscopy to evaluate her further" and that she "was concerned about the finances of the diagnostic workup and would like to hold off on the repeat EGD for now." Dkt. 16 at 6–7 (citing Tr. 234, 754). While Ms. Boykin has presented evidence that she could not afford certain tests, she has not provided any evidence that she attempted to obtain low-cost or free tests, let alone that she was unable to do so. Accordingly, the ALJ was not required to consider Ms. Boykin's inability to pay for these medical tests. *See Chandler v. Saul*, No. 3:19-CV-1266, 2020 WL 6321918, at *9 (N.D. Tex. Oct. 27, 2020) ("Because [the plaintiff] has not shown that he did not have access to free or low-cost medical services, the requirement that the ALJ consider his inability to pay for medical treatment does not apply." (citing *Lovelace*, 813 F.2d at 59)); *Kinan F. v. Saul*, No. 2:19-CV-88, 2020 WL 5930626, at *3 (N.D. Tex. June 19, 2020), *R. & R. adopted*, 2020 WL 4188066 (N.D. Tex. July 21, 2020) ("[The plaintiff] makes conclusory statements that he cannot 'afford or

obtain' treatment . . . but does not explain why he could not obtain medical treatment from other sources, such as free or low-cost medical services, much less provide any such evidence."); *Price v. Colvin*, No. 4:13-CV-01322, 2014 WL 2611804, at *3 (S.D. Tex. June 10, 2014) ("[The plaintiff] has not demonstrated that he is unable to obtain [the prescribed treatment] by utilizing any free or low-cost medical services potentially available . . . Thus, the ALJ's determination that [the plaintiff's] . . . condition is not a severe impairment is based in substantial evidence." (citing SSR 82–59, 1982 WL 31384 at *4)).

Ms. Boykin additionally argues the ALJ erroneously failed to provide a function-by-function assessment of the impact of Ms. Boykin's symptoms on her ability to hold a job for a significant period of time. *See* Dkt. 16 at 12–13. The Commissioner responds that the ALJ did not need to provide such a function-by-function assessment, as the RFC is already a function-by-function assessment of the claimant's exertional capacity. *See* Dkt. 17 at 7.

In support of her argument, Ms. Boykin cites *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986) and *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002). In *Singletary*, the Fifth Circuit held "[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Singletary*, 798 F.2d at 822. In *Watson*, the Fifth Circuit observed, "while it is true that *Singletary* . . . applied the standard to persons suffering from mental illness, this does not necessarily imply that the standard cannot be applied to people who are physically disabled." *Watson*, 288 F.3d at 217. In *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003), the Fifth Circuit clarified, "At bottom, *Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent

12

the claimant from holding a job for a significant period of time." *Id.* at 619. The Fifth Circuit further observed, "[u]sually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment." *Id.* To warrant a distinct determination that the claimant can hold whatever job she finds for a significant period of time ("*Singletary* finding"), it is not enough for the claimant to assert that she can not work at all; rather, she must present evidence that she can only work for short spurts. *See Frank*, 326 F.3d at 621 ("[N]othing in the record suggests that [the claimant] can work only in short spurts. Even [the claimant] herself does not contend that her situation resembles Singletary's: she does not allege that she can work for short spans of time, but cannot hold a job. Instead, she just seems to contend that she cannot work at all. We therefore do not see how the ALJ committed any error under *Singletary*.").

In support of her contention that her diabetes with gastroparesis would result in "excessive absenteeism," Ms. Boykin cites a doctor's report indicating her condition waxes and wanes, the condition's "typical duration is quite variable," and her symptoms make it difficult for her to leave the house. Dkt. 16 at 12 (citing Tr. 253).

The Court finds Ms. Boykin's argument unpersuasive. In his decision, the ALJ found that "[a]lthough the claimant has consistently emphasized her [gastrointestinal] symptoms, the claimant had only one ER visit for stomach pain and nausea in September 2019, with a normal CT of the abdomen" and "the ER visits have not been so frequent as to establish absenteeism-related limitations and the claimant has never had an extended hospitalization." Tr. 15–16. A single ER visit, which did not result in an extensive hospitalization, and statements that the "the typical duration is quite variable" and the condition waxes and wanes are insufficient to warrant a *Singletary* finding. Rather, courts have found a *Singletary* finding warranted where

hospitalizations were numerous and lengthy and objective medical evidence showed that symptoms were severe. *See Fletcher v. Comm'r, SSA*, No. 421CV00173, 2022 WL 3130860, at *8 (E.D. Tex. June 21, 2022), *R. & R. adopted*, 2022 WL 3107905 (E.D. Tex. Aug. 4, 2022); *Johnson v. Colvin*, No. 3:14-CV-04213, 2016 WL 791291, at *5 (N.D. Tex. Feb. 8, 2016), *R. & R. adopted*, 2016 WL 775675 (N.D. Tex. Feb. 29, 2016) (finding a *Singletary* finding warranted where the claimant was hospitalized on eight separate occasions for a total of twenty-one days and received numerous blood transfusions for kidney failure); *Tammy M. v. Berryhill*, No. 3:18-CV-1659, 2019 WL 2107564, at *13–14 (N.D. Tex. Apr. 24, 2019), *R. & R. adopted sub nom. McCann v. Berryhill*, 2019 WL 2103687 (N.D. Tex. May 14, 2019) (finding a *Singletary* finding warranted where the claimant was hospitalized on least twelve separate occasions, spent a total of 100 days in the hospital, and stayed between two and twenty-nine days at a time). Moreover, as already stated, the ALJ's finding that this condition was controlled was supported by substantial evidence. *See Fletcher*, 2022 WL 3130860, at *8 ("The totality of [the plaintiff's] medical record simply does not evidence the waxing and waning of symptoms requiring the ALJ to make an explicit finding that [the plaintiff] has the ability to maintain employment. Moreover, when a medical condition is controlled by medication, that medical condition is not disabling.") (citations omitted).[10]

In her reply, Ms. Boykin discusses cases in which courts have found that due to its episodic nature, cyclic vomiting syndrome ("CVS") warrants a *Singletary* finding. *See* Dkt. 18 at 2. Ms. Boykin argues her diabetes with gastroparesis is similar to CVS and, therefore, a *Singletary* finding

---

[10] During the Hearing, Ms. Boykin testified as to her symptoms stemming from this impairment. *See* Tr. 31–39; 44–46. Ultimately, "the ALJ must consider the testimony of the claimant, but need not accept the claimant's contention as to the severity of his condition." *Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) (per curiam) (citing *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (per curiam)). Further, Ms. Boykin testified that she was fired for absenteeism, which she testified was caused by her symptoms from this impairment. *See* Tr. 31. This testimony does not change the Court's conclusion that Ms. Boykin does not present any objective medical evidence that it was this impairment that caused her absenteeism and eventual termination.

was warranted in her case. *See id.* Assuming *arguendo* that CVS is materially similar to diabetes with gastroparesis, the instant case is distinguishable from the cases to which Ms. Boykin cites; there is substantial evidence that Ms. Boykin's diabetes with gastroparesis is controlled, whereas in the cases to which Ms. Boykin cites, there was evidence in the record that the claimants' CVS was not controlled. In *Bates v. Colvin*, the court noted the claimant had "a longstanding diagnosis of CVS that causes him to have chronic abdominal pain and recurrent episodes of vomiting that occur frequently and can last for days at a time, which has led to [the claimant] being hospitalized numerous times." *Bates v. Colvin*, No. 3:13-CV-1659, 2014 WL 408052, at *6 (N.D. Tex. Jan. 31, 2014). In *Thomas v. Berryhill*, a doctor testified that "if [the claimant] started to have some of the vomiting, she would need to obviously be able to get to a restroom or something of that nature that would have to be readily available," which was supported by the claimant's testimony and a letter from one of her physicians stating that her episodes of vomiting come on with little warning. *Thomas v. Berryhill*, No. 4:17-CV-2031, 2019 WL 691026, at *7 (S.D. Tex. Jan. 30, 2019), *R. & R. adopted*, 2019 WL 669900 (S.D. Tex. Feb. 15, 2019). Fundamentally, these cases are distinguishable from the case here because in her briefing, Ms. Boykin does not cite to any objective record evidence indicating she suffers from a disease that has symptoms like those of CVS.

For the foregoing reasons, the ALJ's finding that Ms. Boykin's diabetes with gastroparesis is controlled, and thus not a basis for disability, is supported by substantial evidence.

### B.  Lumbar Impairment

Ms. Boykin argues the ALJ's conclusion that Ms. Boykin did not meet the requirements of Listing 1.04A is not supported by substantial evidence. *See* Dkt. 16 at 14. Alternatively, Ms. Boykin argues that if there was insufficient evidence of this condition, the ALJ was obligated to

order a consultative examination. *See id.* at 14–15. The Commissioner responds that the ALJ's finding that the evidence did not meet Listing 1.04A is supported by substantial evidence and the ALJ's decision not to order a consultative examination was not an abuse of his discretion. *See* Dkt. 17 at 13–15.

Where, as here, the ALJ's step three determination is at issue, the reviewing court must determine: (1) whether the ALJ supported the step three determination with a discussion of the relevant evidence, and, if he failed to do so, (2) whether the ALJ's error was harmless. *See Tribble v. Colvin*, No. 3:13-CV-2321, 2014 WL 4805776, at *3 (N.D. Tex. Sept. 29, 2014) (citations omitted). The claimant bears the burden of showing the impairment meets all of the specified medical criteria. *See Whitehead v. Colvin*, 820 F.3d 776, 781 (5th Cir. 2016) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

The Listings "describe for each of the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). If the requirements of any Listing are met or equaled by an individual's impairment, the individual is presumptively deemed disabled. *See Whitehead*, 820 F.3d at 780–81.

Listing 1.04A provides:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With . . . [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.04.

The only relevant evidence proffered by Ms. Boykin as to her lumbar impairment is a "CT Abdomen and Pelvis With IV Contrast" report (the "CT Report") dated September 12, 2019, in which Jonathan Reed, MD wrote "there is degenerative collapse of the L5-SI disc space." Tr. 543. Ms. Boykin argues the CT Report is "direct proof of nerve root impingement." Dkt. 16 at 13. The CT Report alone is insufficient to meet Ms. Boykin's burden, as Listing 1.04A requires that all criteria be present on examination simultaneously. *See Gleason v. Comm'r of Soc. Sec. Admin.*, No. 4:15-CV-67, 2016 WL 4435251, at *1 (E.D. Tex. Aug. 23, 2016) (citing AR 15-1(4), 2015 WL 5697481, at *4) ("Our policy is that listing 1.04A specifies a level of severity that is only met when all of the medical criteria listed in paragraph A are simultaneously present . . . ."). Ms. Boykin does not identify specific evidence in the record of all of the following: "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)" and, thus, does not meet her burden. 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.04. The ALJ considered the CT Report and concluded similarly:

> In a brief submitted by the claimant's representative, the claimant alleges that she has an impairment that meets the criteria of Listing 1.04A based on CT abdomen findings of "degenerative collapse of the L5-S1 disc space." Listing 1.04A requires a disorder of the spine, which results in evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test. She has not met her burden of presenting medical evidence that supports such a finding. I have reviewed the medical evidence of record in its entirety and finds that, when considered individually or in combination, the claimant's impairments do not meet or equal the level of severity set forth in any of the listings.

Tr. 14. The ALJ properly identified the listed impairment for which Ms. Boykin's symptoms failed to qualify and provided an explanation in support of his conclusion. *Cf. Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

While Ms. Boykin argues the CT Report is sufficient to meet the requirements of Listing 1.04A, she seems to acknowledge she has not provided certain evidence required by Listing 1.04A. *See* Dkt. 16 at 14 ("Nowhere in the record is a 'positive straight leg test' or any other orthopedic test performed because of [Ms. Boykin's] difficulty in obtaining treatment and the focus of her gastrointestinal problems. Her care has been from endocrinologists and gastroenterologists."). Ms. Boykin argues it was the ALJ's responsibility to order a consultative examination, as the record contained insufficient information from which the ALJ could make an informed decision. *See id.* at 15–16.

The ALJ has a duty to develop the facts fully and fairly. *See Boyd*, 239 F.3d at 708 "When a 'full and fair record' is lacking, the ALJ will not have 'sufficient facts on which to make an informed decision' and thus his decision will not be 'supported by substantial evidence.'" *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)). However, "'[t]he ALJ's duty to investigate . . . does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record.'" *Id.* at 147 (quoting *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995)). Under 20 C.F.R. 404.1519a(b), the ALJ has the discretion to order a consultative examination "to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow [the ALJ] to make a determination or decision on [the] claim." 20 C.F.R. 404.1519a(b). Such an exam must be ordered only when necessary to develop a full and fair record. *See Goforth v. Comm'r, Soc. Sec. Admin.*, No. 6:14CV591, 2016 WL 878323, at *2 (E.D. Tex. Mar. 8, 2016)

18

(citing *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989); *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam)). The claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination." *Jones*, 829 F.2d at 526.

> At the Hearing, Ms. Boykin's attorney mentioned the CT Report as follows:

> [T]he only evidence I put in the brief was the fact that they — you know on the CT, when they were doing it, they saw a total degenerative collapse of the L5-SI disc space, which kind of caught me off guard when I was looking through the records because, you know, this was — didn't seem to be a back-issue case, but the — that piece of evidence kind of jumped out at me.

Tr. 47. This testimony by itself does not sufficiently raise a suspicion as to require the ALJ to order a consultative exam. Importantly, nowhere in the record did Ms. Boykin or her attorney request a consultative exam. *See Jones*, 829 F.2d at 526 (finding the claimant failed to sufficiently raise a suspicion where, among other things, "there is no indication in the record that he ever requested a consultative examination"); *accord Norris v. Berryhill*, No. 3:15-CV-3634, 2017 WL 1078524, at *17 (N.D. Tex. Mar. 22, 2017) (finding the ALJ did not abuse his discretion in not ordering a consultative examination where, among other things, "there was . . . no evidence that the claimant raised the need for or independently sought an additional consultative examination at the hearing (where she was represented by counsel) or at any time before the ALJ rendered his decision"); *Rodriguez v. Colvin*, No. 1:13-CV-0147, 2015 WL 1004858, at *5 (N.D. Tex. Mar. 5, 2015) (citing *Flores v. Astrue*, 246 F. App'x 540, 543 (10th Cir. 2007) (declining remand because "[t]hroughout the administrative proceedings, neither [claimant] nor her lawyer ever requested a consultative examination of this . . . impairment — instead she raised this issue for the first time on her appeal to the district court.")); *cf. Pearson v. Bowen*, 866 F.2d 809, 812–13 (5th Cir. 1989) (finding the claimant sufficiently raised a suspicion where, among other things, she requested a pulmonary

19

study). Further, as raised by the Commissioner, when Ms. Boykin's attorney was asked by the ALJ whether the evidence was complete, Ms. Boykin's attorney responded that it was. *See* Dkt. 17 at 14 (citing Tr. 29). *See Gannon v. Astrue*, No. CIV.A.3:07-CV-1057, 2008 WL 4490738, at *11 (N.D. Tex. Oct. 3, 2008) ("Additionally, as in *Jones*, [the plaintiff] has not previously indicated that the record needed further development." (citing *Jones* 829 F.2d at 525)); *see also Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) (per curiam) ("To be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision.") (emphasis added).[11]

Ms. Boykin argues "the duty to develop the record includes the further inquiry into her Lumbar condition, ordering a consultative examination — something that the claimant *had not been offered* during the entire administrative process" and that "[the ALJ's decision does not] discuss why a consultative examination was *not* necessary for a 'nonsevere' condition that was applied to a Listings analysis." Dkt. 16 at 15–16 (emphases added). Contrary to the implication of these arguments, it is the claimant's burden, not the ALJ's, to show at step three that the claimant has an impairment. *See Walters v. Comm'r of Soc. Sec.*, No. 4:20-CV-00816, 2021 WL 5568167, at *5 (N.D. Tex. Nov. 5, 2021), *R. & R. adopted*, 2021 WL 5566350 (N.D. Tex. Nov. 29, 2021)

---

[11] In her reply, Ms. Boykin notes that her lumbar impairment was identified by the ALJ at the hearing, as follows:

> I had intended to leave the questioning about your back to your attorney, since it is not really well developed in the record, but I do want to ask a question since there is ample medical evidence in your file but, very, very little related to your back. . . .

Dkt. 18 at 4 (citing Tr. 40). The ALJ then asked Ms. Boykin questions about her back pain. *See* Tr. 40–41. The ALJ asked Ms. Boykin if the measures she had taken regarding her back pain had occurred before 2017 (i.e. before her alleged onset date), to which Ms. Boykin responded yes. *See id.* at 41. Ms. Boykin's testimony that she took measures for her back pain prior to her alleged onset date, for which there is no other evidence in the record, is likewise insufficient to raise a suspicion regarding her lumbar impairment and does not change the fact that neither she nor her attorney requested a consultative examination.

("[The claimant] insists she has 'not been offered' a consultative examination 'during the entire administrative process.' But the ALJ was not required to offer or order such an examination unless it was necessary to reach her disability decision.") (citations omitted); *see also Castillo v. Barnhart*, 325 F.3d 550, 552–53 (5th Cir. 2003) (per curiam) (holding that because the claimant was represented by counsel, no "heightened duty to scrupulously and conscientiously explore all relevant facts" arose (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996))). As neither Ms. Boykin nor her attorney requested a consultative examination, and her attorney specifically represented that the evidence was complete, the ALJ did not abuse his discretion by not ordering a consultative examination regarding Ms. Boykin's lumbar impairment.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED**.


**So ORDERED and SIGNED this 20th day of March, 2023.**

KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE